Campbell, Chief Justice,
delivered the opinion of the court:
Under authority of the act of August 29, 1916, 39 Stat., 592, the Government entered into several contracts with plaintiff for use of certain trawlers, the property of the plaintiff. By the several contracts (and they are substantially alike) the plaintiff agrees “to let and demise” the named vessel to the Government “ to be used in such manner, for such purposes, and for such period of time as may in the discretion of the Secretary of the Navy be desirable.” The Government agreed to pay to the owner as charter money for said vessel for the use thereof “ from the time of her delivery until the return thereof to the owner ” a monthly sum, to be determined by a board of appraisers appointed by order of the President. The amount of the charter money was duly determined, and no question arises upon this amount. The contract further provided that the vessel would be returned to the owner “ at the place of delivery ” at a date not later than “ a reasonable time after peace is declared,” and that the Government would pay the cost of restoring the vessel to the same condition and good order in all respects in which she was when delivered to the Government, ordinary wear and tear excepted, and provision is made for the determination of this amount by a board of arbitrators, one to be chosen by each of the parties, and the third to be selected by the two so chosen. The determination of the arbitration was to be subject to the approval of the Secretary of the Navy. In case of loss of the vessel, the Government was to pay her value at the time of her delivery to the Government, such value to be determined by the board of appraisers above mentioned.
*69 After the three vessels, with which this case mainly has' to do, had been in use for some months, during which period the charter money as ascertained and determined by the board of appraisers had been regularly paid, the Secretary of the Navy on January 23, 1919, telegraphed the plaintiff that the Navy Department “cancels” the leases of those three trawlers as of January 31, and, confirming this telegram by letter of same date, stated that in view of the fact, that the services of the trawlers were “no longer needed, by the Navy, it has been decided to cancel their leases and return them to you, the owners.” The letter also stated! that the commandant of the first naval district had been directed “ to deliver the boats to you and to terminate the leases as of January 31, 1919.”
The vessels were not actually delivered to plaintiff until April 3, 1919. The Government debited plaintiff’s claim on account of three other vessels with the amount which defendant claims was the cost to it of the care and maintenance of the three trawlers from January 31 to April 1, and refused to pay any sum on account of charter money during the period in question. The plaintiff is therefore-suing for the agreed pay of its trawlers for the period elapsing between January 31 and April 3, 1919, and for the-amount deducted by the Government from other moneys; due the plaintiff under its claim for care and maintenance,, also for compensation for three other trawlers which should' have been returned March 31 and were not delivered to the owners until April 3.
The contracts, called “Lease agreement,” provide for the use of the trawlers for such period of time as in the discretion of the Secretary of tire Navy may be desirable. This; authorized the Secretary to terminate the lease at any time. The contracts also contemplated that the vessels would be-returned to their owner “at the place of delivery” and', that the stipulated or ascertained charter money would be paid “ from the time of her delivery until the return thereof to the owner.” Why were they not returned to the owner' before the date mentioned in April?
When the naval officers had been directed, in pursuance-of the Secretary’s letter to plaintiff, “ to deliver the boats *70 to plaintiff “ and to terminate tbe leases as of Jannary 31,” the plaintiff was notified by the officers that they desired to return and were ready to return the vessels, but before doing so the plaintiff would have to ■ sign a form of receipt or release which was shown to plaintiff, and the latter declined to sign the release. As a consequence of this demand and refusal the delivery of the vessels to plaintiff was delayed until the time stated, at which time a very different receipt was executed and accepted. The release, for such it was, which the plaintiff was asked to sign as a condition precedent to the return of the trawlers would have materially altered the rights secured by the contract or lease under which the vessels were held by the Government.
The provisions of the contract relative to the payment of cost of restoration of the vessels and the manner of its ascertainment contemplates a simple and reasonably expeditious method of determining the amount, namely, by arbitrators chosen by the parties, as has been stated. The release which plaintiff was asked to sign left this question to a board of appraisers without any provision as to when the board should act, and remitted the owner to a lawsuit in case the award of the board was unsatisfactory. The defendant’s counsel suggests, however, that the Government had the right to cancel the contract under the provisions of the act of June 15, 1917, 40 Stat. 182. It is unnecessary to again discuss that act. See Meyer Scale & Hardware Co. Case, ante, p. 26. But the, Secretary of the Navy did not proceed under this act. His instructions to the commandant were to “ terminate ” the lease as of a given date, and his use of the word “cancel” did not vary the purpose. This right to terminate at his discretion the lease was secured by the express terms of the contract, and the Secretary recognized this and also the Government’s obligation to “ return ” the vessels to their owners. After the plaintiff had refused to sign the tendered release and after the delay which was responsible for this suit the Navy Department receded from its demand and accepted from plaintiff a simple receipt for the vessels. This kind of receipt the plaintiff had during the delay been willing to give.
*71 The defendant next suggests that there is no proof of damages, if it be conceded that the demand of the release constituted a breach of the contract. But the contract itself provides that the Government shall pay charter money “ from the time of her delivery until the return thereof to the owner.” Evidently the Secretary of the Navy recognized that a return of the vessels was as much a part of the Government’s contractual obligation on the termination of the lease as the right to terminate was itself contractual, and he proceeded in recognition of these rights. The plaintiff’s use and enjoyment of its craft was as much interrupted by the failure to return the vessels as it was by their actual use by the Government. The latter agreed to pay for them until their return.
It follows that the plaintiff should recover the several amounts stated in the findings to be $29,994.54, and judgment should be accordingly entered against the United States. And it is so ordered.
Gbaham, Judge; Hat, Judge; DowNey, Judge; and Booth, Judge, concur.